BROOKE, J.
I do not think • that parol evidence is admissible to prove a trust in the slaves delivered by the father to the wife of Eondon. The act of 1787 concerning slaves (1 Rev. Code of 1819, ch. 11, § 51, p. 432), adopts the provision of the act of 1758, which required that gifts of slaves should be by will or deed duly proved and recorded; but provides that that provision should not extend to gifts of slaves where the possession was in the donee or those claiming under him; evidently intending to apply to the case of absolute gifts, and leaving the cases of special gifts with limitations and trusts for others than the donee, to be provided for by will or deed duly proved and recorded according to the act of 1758. The delivery of possession by the donor to the donee would be insufficient evidence to all the world of the right of property in the donee, but would be no evidence of any trust or limitation for others; and to admit parol evidence to prove such trust or limitation, would let in all the frauds intended to be prevented by the will or deed required in the first provision of the section in the case of special gifts of slaves. In the case before us, the delivery of the slaves by the father to his daughter mrs. Eondon vested the property in them in her husband, by virtue of his marital rights, and left nothing in the father to be disposed of by his *will: which .disposition, by the way, appears to me, upon the testimony in the case, to have been an afterthought, when Eondon the husband had become much involved, and to have been designed to protect the property in the slaves from his creditors.
I prefer this view of the case to putting it on the last provision in the 2d section of the act to prevent frauds and perjuries, 1 Rev. Code, ch. 101, p. 373, as upon the evidence in the case the possession of the slaves had not remained In the donee five years before the will of the father was duly proved and recorded; a point much pressed in the argument.
The order must be affirmed.
TUCKER, P.
From the evidence in this case I am satisfied that very soon after the marriage of mrs. Eondon, her father made her a gift of the slaves, from one of whom the slave in question descended. The testimony does not furnish the slightest foundation for the opinion that the transaction was a loan; and hence the notion of a reclamation by his will, according to the principles of Beasley v. Owen, 3 Hen. & Munf. 449, is out of the question. The will can have no influence except to confirm the position that there was a gift, and not a loan. If it applies to this transaction at all, it recognizes it as a gift; if it does not, it can have no effect in confirming the rights of mrs. London.
Considering it as a gift, and admitting that it was to the daughter for life, with remainder to the children, what was its effect? It is contended that it was designed as a trust for the daughter, and equity will *669 consider the husband as trustee, if none other be named. The legal title is cast upon him by the gift without the intervention of a trustee, and equity will affect his conscience with the trust, if he received the property upon confidence that he would hold it for her use. This is indeed true as between the parties themselves; but the ^'question is not between them, but between the wife and the creditors of the husband; and then we are to say whether equity will set up a secret parol trust in behalf of the wife against the creditors of the husband. The statement of the question at once suggests the answer. If there were no statute of frauds, such a course would be against the best received principles of equity. The creditors have the law in their favour, and the equity set up against them is secret and eminently calculated to defraud and deceive. But the statute places the matter beyond question. Here is a limitation of an use pretended to have been made by way of trust, in this property which was given to the wife, and the legal title and possession whereof eodem flatu vested in the husband. This limitation is by the statute denounced as fraudulent, and the absolute property is declared to be with the possession.
The pretension of a remainder in the children is yet more unfounded. If they take any thing, it is a legal estate in remainder, and not a mere equitable interest. Now it may well be doubted whether a remainder in chattels can pass without deed or will. At common law, such remainders were in no case permitted. Afterwards they were recognized in deeds and wills (5 Bac. Abr. 720; 1 Burr. 284; Bradley v. Mosby, 3 Call 50), but I have found no case where a parol remainder has been sustained. But be this as it may between the parties, the statute of frauds very clearly declares such a limitation invalid as to creditors.
It is suggested, however, that there being no children in esse when the parol gift was made, the remainder was for that cause void, and so the right after the daughter’s death would revert to the father, and was therefore liable to be disposed of by his will. I do not think so. The father by the gift intended to pass away the property altogether from himself; and where such intention appears, the absolute property vests in the first *taker, if the remainder over is void. 1 P. Wms. 666; 5 Bac. Abr. 722. A gift of personalty, on common law principles, passed the absolute right. The courts afterwards modified that general principle, in behalf of certain remainders and limitations which the law recognized as good. But if the remainder limited is not good, the original rule prevails. So that here the estate of the daughter was absolute if the remainder was void, and the marital rights of the husband were commensurate with hers.
If majT be proper to observe that if, contrary to this view of the matter, a reversion was reserved to the father, dependent upon the daughter’s life, it would be as literally within the statute of frauds as a remainder is, and would accordingly be void, since it would set up a secret interest in derogation of that absolute property which the law infers from possession, unless it be limited by deed or will duly proved and recorded. There is indeed nothing against which the act is so distinctly directed, as a parol reservation of rights in the donor, while to all the world the donee retains that principal indicium of property, the possession of the chattel.
As to the alleged purchase of London’s interest by his wife, that was so far from being made the foundation of her title, that she alleges it was made under a mistaken view of her rights. The defendant therefore was not called to answer to it. If, upon the cause going back, she choose to amend her bill apd rest herself upon this purchase, the defendant will then answer, and that matter will be determined upon such evidence as she shall produce.
I am of opinion to affirm the order.
CABELL, J., concurred in the opinion of the president.
Order affirmed.